## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JERRY WANZER, TDCJ #00855976 | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | SA-20-CV-00779-XR |
| | § | |
| PHONSO J. RAYFORD, Senior Warden, John B. Connally Unit, In His Individual and Official Capacities, ET AL., | § | |
| Defendants. | § | |

## ORDER OF DISMISSAL

Before the Court are the *pro se* 42 U.S.C. § 1983 Civil Rights Complaint and the response to the Court's Order for More Definite Statement filed by Plaintiff Jerry Wanzer ("Wanzer"), the Motion to Dismiss filed by Defendant Frank Stengel ("Stengel"), the Motion to Dismiss filed by Defendant Brian Wong ("Dr. Wong"), the Motion to Dismiss filed by Defendants Phonso J. Rayford (Senior Warden), John A. Marcum (Assistant Warden), Debra Gloor (Senior Practice Manager), Kelly Kotzur (Food Kitchen Captain), Kathy Akin (Food Kitchen Captain), Owen Murray (UTMB Director), Bobby Lumpkin (TDCJ Director), Sylvia Peterson (Law Library Supervisor), Sierra Woleslagle (TDCJ Lieutenant), Pauline Dancy (TDCJ Lieutenant), Roberto Alexandre (TDCJ Captain), and Dixie Rojas (TDCJ Lieutenant) (collectively "the TDCJ Defendants"), the responses to the motions to dismiss filed by Wanzer, and the reply to the response filed by Dr. Wong.[1] (ECF Nos. 1, 16, 23, 24, 30, 34, 34, 37, 38). After review, this Court orders the motions to dismiss **GRANTED**. (ECF Nos. 23, 24, 30); *see* FED. R. CIV. P. 12(b)(1),

---

[1] In his Complaint, Wanzer misidentified or failed to fully identify several defendants — "Doctor Wong," "Debra Gloor, Medical Supervisor," "UTMB Director," "Wolf [Lt]," "Alexander [Capt.]," and "Rodas [Lt]. (ECF No. 1). Following service, counsel for Defendants fully and properly identified these defendants in their respective motions to dismiss. (ECF Nos. 23, 24). Accordingly, the Court ordered the Clerk of Court to correct the names and titles of the defendants as set out in the motions to dismiss. (ECF No. 27).

(6). The Court further orders Wanzer's claims against Defendants Stengel and the TDCJ Defendants in their official capacities for monetary damages **DISMISSED FOR WANT OF JURISDICTION** based on sovereign immunity. (ECF No. 1); *see* U.S. CONST. amend. XI; FED. R. CIV. P. 12(b)(1). The Court further orders Wanzer's claims against all Defendants in their individual capacities **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); FED. R. CIV. P. 12(b)(6).

BACKGROUND

Wanzer is serving a seventy–five (75) year sentence in the Texas Department of Criminal Justice ("TDCJ") for aggravated sexual assault of a child. *See* [Texas Department of Criminal Justice Inmate Search](#) (last visited Jan. 28, 2022). Wanzer is confined in TDCJ's Connally Unit. *Id.* While confined, Wanzer filed this section 1983 action against Defendants. (ECF No. 1). In his Complaint, Wanzer alleges violations of his civil rights in five areas: (1) denial of medical treatment; (2) water contamination; (3) inadequate meals; (4) denial of access to courts; and (5) retaliation in relation to his medical treatment and access to courts claims. (*Id.*). As relief, Wanzer seeks monetary damages and various forms of injunctive relief. (*Id.*).

Upon initial review of this matter, this Court denied Wanzer's application to proceed *in forma pauperis* ("IFP") and dismissed without prejudice his Complaint pursuant to the three–strikes dismissal rule. (ECF No. 5, 6); *see* 28 U.S.C. § 1915(g). Wanzer filed a motion to reinstate, which was denied. (ECF Nos. 7, 8). Wanzer appealed, and the Fifth Circuit reversed, holding that Wanzer's allegations relating to his medical and water contamination claims were sufficient to show "imminent danger of serious physical injury." (ECF No. 9); *see Wanzer v. Rayford*, 832 F. App'x 319, 320 (5th Cir. 2020) (per curiam). On remand, this Court granted

2

Wanzer's IFP application and ordered him to file a more definite statement. (ECF Nos. 12, 13). After Wanzer filed his more definite statement, this Court rendered an Order of Partial Dismissal, dismissing Wanzer's claims against Defendants Veolia North America and Gary Wagner because those defendants are non–state actors not subject to suit under section 1983. (ECF Nos. 16, 17); *see Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017) (holding private individuals are not generally considered state actors subject to suit under section 1983); *Blankenship v Buenger*, 653 F. App'x 330, 332 (5th Cir. 2016) (holding that under public function test, provision of water services does not fall within activities exclusively reserved to State so as to render those who provide such services subject to section 1983 claims).

Following the partial dismissal, the Court ordered service upon the remaining defendants. (ECF No. 18). Ultimately, motions to dismiss were filed on behalf of the TDCJ Defendants, Dr. Wong, and Stengel. (ECF Nos. 23, 24, 30). Stengel and the TDCJ Defendants moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) — dismissal for want of jurisdiction and for failure to state a claim, respectively. (ECF Nos. 23, 30); *see* FED. R. CIV. P. 12(b)(1), (6). Dr. Wong moved to dismiss based solely on Rule 12(b)(6). (ECF No. 24); *see* FED. R. CIV. P. 12(b)(6). Wanzer filed responses to the motions to dismiss. (ECF Nos. 34, 37, 38). Dr. Wong filed a reply to Wanzer's response to his motion to dismiss. (ECF No. 37). After reviewing the motions to dismiss, Wanzer's responses, and Dr. Wong's reply, the Court finds the motions to dismiss should be granted and Wanzer's claims dismissed.

**STANDARD OF REVIEW**

### A.  *Federal Rule of Civil Procedure 12(b)(1)*

Rule 12(b)(1) allows for a dismissal of a complaint based on the absence of subject–matter jurisdiction. FED. R. CIV. P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Lack of subject–matter jurisdiction may be found based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming*, 281 F.3d at 161. The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Id.* "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id.* This prevents a court without jurisdiction from prematurely dismissing a case with prejudice. *Id.*

In reviewing a motion to dismiss based on Rule 12(b)(1), a district court is empowered to consider matters of fact that may be in dispute. *Id.* Ultimately, a Rule 12(b)(1) motion to dismiss should be granted only if it appears certain the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Id.*

### B.  *Federal Rule of Civil Procedure 12(b)(6)*

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure to state a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). When a district court reviews a motion to dismiss pursuant to Rule 12(b)(6), it must construe the complaint in the plaintiff's

4

favor, taking "all well–pleaded facts as true" and asking whether the complaint contains sufficient "facts to state a claim to relief that is plausible on its face." *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016); *see* FED. R. CIV. P. 12(b)(6). To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's legal conclusions are not entitled to the same deference and assumptions as his well pleaded facts; "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Thus, although the Court must accept well–pleaded factual allegations as true, it need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Moreover, when, as here, the Court has provided an IFP plaintiff with an opportunity to amend his complaint or provide a more definite statement, the Court's "license to engage in speculation as to the existence of additional facts" is limited. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). In other words, a district court does not abuse its discretion in dismissing an IFP plaintiff's claims when it has provided him with an opportunity to state his allegations more specifically. *See Eason v. Thaler*, 14 F.3d 8, 10 (5th Cir. 1994) (holding district court abused its discretion in dismissing IFP plaintiff's complaint without providing him with opportunity to offer more detailed factual allegations).

Although generally the Court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claims, as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387

(5th Cir. 2010); *see United States ex rel. Willard v. Humana Health Plan of Tex., Inc.,* 336 F.3d 375, 379 (5th Cir. 2003) (stating that "the court may consider ... matters of which judicial notice may be taken"). Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b).

ANALYSIS

### A. *Rule 12(b)(1): Stengel and the TDCJ Defendants*

Wanzer sued Stengel and the TDCJ Defendants in their official capacities for monetary damages. (ECF No. 1). In their motions to dismiss, Stengel and the TDCJ Defendants contend Wanzer's claims against them in their official capacities for monetary damages are barred by the Eleventh Amendment. (ECF Nos. 23, 30); *see* U.S. CONST. amend XI.

The Eleventh Amendment bars suits by private citizens against a state in federal court. *Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011); *K.P. v. Leblanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citing *Hutto v. Finney*, 437 U.S. 678, 700 (1978)); *see* U.S. CONST. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). Federal claims against state employees in their official capacities are the equivalent of suits against the state. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Monell*, 436 U.S. at 658,

6

690 n.55 (1978). The bar of the Eleventh Amendment is in effect when state officials are sued for monetary damages in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Cory v. White*, 457 U.S. 85, 90, (1982). This is so because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Graham*, 473 U.S. at 169 (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)).

Regarding section 1983 claims, the Supreme Court has held a state is not considered a "person" within the meaning of the statute. *Will*, 491 U.S. at 64. Accordingly, although state officials literally are persons, if sued in their official capacities, they are not deemed "persons" for purposes of section. *Id.* at 71. In other words, a suit against an official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. *Id.*; *Brandon*, 469 U.S. at 471. As a suit against the official's office, it is no different from a suit against the state itself. *Will*, 491 U.S. at 71 (citing *Graham*, 473 U.S. at 165–66; *Monell*, 436 U.S. at 690 n.55). Thus, section 1983 suits brought against state officials in their official capacities for monetary damages or for retrospective relief are, likewise, barred under the Eleventh Amendment. *See id.*

Stengel and the TDCJ Defendants are, or were, officials of the State of Texas. Thus, Wanzer's claims against these Defendants in their official capacities for monetary damages or other retrospective relief are subject to dismissal for want of jurisdiction based on sovereign immunity. *See Will*, 491 U.S. at 71; *see also* U.S. CONST. amend. XI.

## B. *Rule 12(b)(6): Stengel*

### 1. *Insufficient Allegations of Personal Involvement*

In his Complaint and more definite statement, Wanzer contends only that Stengel, a former assistant warden at the Connally Unit, instructed subordinates to implement policies and practices

7

in violation of Wanzer's rights under the First, Eighth, and Fourteenth Amendments. (ECF Nos. 1, 16). Wanzer claims Stengel's "instructions" related to his claims involving contaminated water, inadequate meals, denial of access to courts, and retaliation. (ECF Nos. 1, 16). In his motion to dismiss, Stengel contends Wanzer has failed to plead sufficient facts from which this Court could infer any personal involvement in Wanzer's alleged constitutional violations. (ECF No. 30).

To state a section 1983 claim against a defendant in his or her individual capacity, a plaintiff must allege the defendant was personally involved in the actions complained of or is responsible for the policy or custom giving rise to the alleged constitutional deprivation. *See Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (holding that under section 1983, officials are not vicariously liable for conduct of those under their supervision, they are accountable for their own acts and for implementing unconstitutional policies that result in constitutional deprivations); *Jones v. Lowndes Cnty.*, *Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) ("A Section 1983 claimant must 'establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation.'").

Wanzer has not alleged Stengel was personally involved in any alleged constitutional violation or that he was responsible for a policy or custom that gave rise to any alleged constitutional violation. (ECF Nos. 1, 16). In fact, it appears Wanzer is merely alleging Stengel is responsible for any constitutional violations only in his supervisory capacity, instructing subordinates to act according to TDCJ policies and practices. (ECF Nos. 1, 16). In the Court's Order for More Definite Statement, Wanzer was ordered to "state for each individual defendant the specific acts or omissions" he claimed the defendant committed and the date or dates of such

actions. (ECF No. 13). Wanzer did not identify any specific act or omission committed by Stengel or the dates of such acts or omissions; rather, he globally asserts Stengel instructed unnamed subordinates to implement undefined policies and practices relating to contaminated water, inadequate meals, denial of access to courts, and retaliation. (ECF Nos. 1, 16). Wanzer provides no factual information as to which subordinates were "instructed," what exactly they were instructed to do, or what policies and practices were involved and how Stengel had control over such policies. (ECF No. 1, 16).

In the absence of allegations that a defendant was personally involved in the alleged constitutional violations or responsible for a policy or custom that gave rise to such constitutional violations, a plaintiff fails to state a claim upon which relief may be granted against that defendant. *See Alderson*, 848 F.3d at 420. Therefore, to the extent Wanzer seeks to recover against Stengel in his individual capacity, his claims are subject to dismissal for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

  2.   *Insufficient Allegations of Supervisory Liability*

As stated above, Wanzer appears to contend Stengel is liable in his supervisory capacity. (ECF Nos. 1, 16). As discussed, personal involvement is generally a prerequisite to liability under section 1983. *See Alderson*, 848 F.3d at 420. However, a supervisory official may be held liable under section 1983 if he: (1) affirmatively participates in the acts that caused the constitutional deprivations alleged; or (2) implements unconstitutional policies that causally result in the constitutional injury alleged. *Gates v. Tex. Dep't of Protective & Regulator Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). To establish supervisory liability for constitutional violations committed by subordinates, a plaintiff must show the supervisor acted or failed to act "with *deliberate*

*indifference* to violations of others' constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates*, 537 F.3d at 435) (emphasis in original). Supervisory actions that are merely inept, erroneous, or negligent do not amount to deliberate indifference. *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999).

The Court has previously determined that Wanzer failed to allege personal involvement by Stengel. *See, supra.* Wanzer has likewise failed to allege any facts establishing supervisory liability by Stengel. (ECF Nos. 1, 16). Wanzer does not allege in either his Complaint or more definite statement that Stengel "implemented unconstitutional policies" that caused his alleged constitutional injuries, *see Gates*, 537 F.3d at 435, nor does he alleged Stengel acted with deliberate indifference to the violation of his constitutional rights by particular subordinates. *See Porter*, 659 F.3d at 446. Rather, Wanzer's statements regarding Stengel's actions, personal or supervisory, are merely bare conclusions unsupported by facts. Thus, as to Stengel, the Court finds he has failed to state a claim upon which relief may be granted, thereby entitling Stengel to a dismissal. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

### C. *Rule 12(b)(6): Dr. Wong*

Wanzer contends Dr. Wong, an ophthalmologist, acted with deliberate indifference to his serious medical needs by failing to treat a cataract in his left eye. (ECF Nos. 1, 16). Dr. Wong raises numerous grounds in support of his motion to dismiss, including limitations, failure to exhaust, failure to state a claim upon which relief may be granted, and qualified immunity. (ECF No. 24). The Court finds Wanzer's claims against Dr. Wong are subject to dismissal based upon limitations, and therefore, the other grounds need not be addressed.

In his Complaint, Wanzer states that in 2014 his right eye was surgically treated for damage that occurred in 2012. (ECF No. 1). Wanzer contends he was likewise supposed to have surgical treatment for his left eye for cataracts, but the doctor who was supposed to perform the surgery failed to do so. (*Id.*). Wanzer claims the doctor who failed to perform the surgery on his left eye is Dr. Wong. (*Id.*). According to Wanzer, Dr. Wong evaluated him in 2012 and recommended surgery but "never filfilled [sic] his job duty" and "left him to suffer pain and anguish for years." (ECF No. 16). Thus, Wanzer is claiming Dr. Wong acted with deliberate indifference to his serious medical needs by failing to surgically treat his left eye. (ECF Nos. 1, 16).

Section 1983 contains no statute of limitations provision. *Owens v. Okure*, 488 U.S. 235, 39–40 (1989); *Heilman v. City of Beaumont*, 638 F. App'x 363, 366 (5th Cir. 2016); *see* 42 U.S.C. § 1983. Therefore, the applicable statute of limitations is determined by the general statute of limitations governing personal injury actions in the forum state.[2] *Owens*, 488 U.S. 235, 39–40; *Heilman*, 636 F. App'x at 366. Texas has a two–year statute of limitations for personal injury claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001); *Ashley v. Hawkins*, 293 S.W.3d 175, 180 (Tex. 2009). The limitations period begins to run when the cause of action accrues, which is when the plaintiff knows or has sufficient information to know that he has suffered an injury. *Hitt v. Connell*, 301 F.3d 240, 246 (5th Cir. 2002).

---

[2] Dr. Wong argues both the two–year statute of limitations found in section 16.003(a) of the Texas Civil Practice & Remedies Code and the two–year statute of limitations found in section 74.251(a) of the same Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.003(a), 74.251(a). Section 16.003(a) is applicable personal injury actions; section 74.251(a) is applicable to health care liability claims. *Compare* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a), *with id.* § 74.251(a). The Court has found no cases applying the limitations period applicable to a health care liability claim to section 1983 actions. The Court finds it makes no difference because both limitations periods are two years.

Wanzer admits the events forming the basis for his section 1983 claims against Dr. Wong occurred in 2012 — "Dr. Wong evaluated Plaintiff in 2012 and recommended to perform the surgery on Plaintiff [due to the severity of the problem]. However, Doctor Wong never filfilled [sic] his job duty to treat Plaintiffs [sic] medical ailments and left him to suffer pain & anguish for years." (ECF No. 16). However, Wanzer did not file his Complaint in this matter until July 2, 2020, approximately eight (8) years after the events forming the basis of his civil rights claims against Dr. Wong.[3] (ECF No. 1). Thus, it appears his claims in this matter are barred by the applicable statute of limitations. However, Wanzer seems to contend his claims are not barred because the defendants in a previously–filed lawsuit failed to disclose Dr. Wong's name in response to a discovery request promulgated by Wanzer. (ECF No. 35). Thus, he appears to be alleging his claims are tolled based on the doctrine of fraudulent concealment. (*Id.*).

A section 1983 claim accrues when the plaintiff has knowledge of the events giving rise to his claim. *Matthews v. Speier*, 123 F. App'x 611, 612 (5th Cir. 2005). Limitations are not tolled for fraudulent concealment if the plaintiff is aware *of the facts necessary* to know a claim existed. *Id.* at 613. Moreover, in the Fifth Circuit, to invoke the doctrine of fraudulent concealment, the plaintiff must establish: (1) the defendant concealed the conduct complained of; and (2) the plaintiff failed, despite the exercise of due diligence, to discover the facts that form the basis of his claim. *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1529 (5th Cir. 1988).

Here, by his own admission, Wanzer knew of the allegations he raises in this action against Dr. Wong in 2012 — he knew he saw Dr. Wong (even if he did not know his name) in 2012 and the recommended surgery did not occur then or subsequently. (ECF No. 16). Moreover, Court

---

[3] The Complaint was signed June 26, 2020. (ECF No. 1).

records show that in a February 10, 2015 Order from this Court in a section 1983 matter previously filed by Wanzer, Dr. Wong's name was disclosed. *See Wanzer v. Gloor*, No. SA-13-CA-693-HJB, 2015 WL 13546620, at *3 (W.D. Tex. 2013).

In 2013, Wanzer filed a section 1983 action against TDCJ officials and two doctors, alleging deliberate indifference to his serious medical needs based on lack of treatment to his injured right eye. *Id.* at *1. In the Order granting summary judgment in favor of the defendants, this Court specifically stated that a doctor scheduled Wanzer to be seen by "Dr. Wong" on February 2, 2012, for elective cataract surgery on his left eye. *Id.* at *3. According to the Court, the record demonstrated Wanzer was evaluated by "Dr. Wong" on February 2, 2012, but the treatment notes indicated no surgery was scheduled or immediately necessary, only that surgery would be scheduled sometime in the future for cataract extraction. *Id.* Thus, based on the Court's Order, Wanzer knew about his cataract, i.e., had knowledge of the events giving rise to his claim, in February 2012. *See Matthews*, 123 F. App'x at 612. More importantly given his argument about alleged concealment of Dr. Wong's name, Wanzer knew Dr. Wong's name and that he was the doctor treating Wanzer's left eye — the basis of his section 1983 claim against Dr. Wong in this case — no later than February 10, 2015, the date of Court's Order. In fact, in his more definite statement, Wanzer admits "[i]t was only after this Court dismissed Wanzer v. Gloor, did Plaintiff learn" Dr. Wong's name." (ECF No. 16). Thus, Wanzer had knowledge of the events giving rise to his claim against Dr. Wong in 2012 and by his own admission knew Dr. Wong was the treating physician relating to this claim no later than February 2015.

Accepting Wanzer's contention that his claim did not arise in 2012 due to concealment of Dr. Wong's name — even though it was not concealed by Dr. Wong — Wanzer knew Dr. Wong's

name — and that he was the doctor Wanzer had seen for his left eye issue — no later than February 10, 2015, the date of this Court's Order in the 2013 litigation. Thus, the very latest date upon which Wanzer's claim could have accrued was February 10, 2015. Given the two–year limitations period, any section 1983 action against Dr. Wong based on lack of treatment for the cataract issue in Wanzer's left eye had to be filed no later than February 10, 2017. Wanzer did not file this action until July 2020. (ECF No. 1). Accordingly, the Court finds limitations bars Wanzer's claims against Dr. Wong, entitling Dr. Wong to a dismissal of the claims against him for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Piotrowski*, 237 F.3d at 576.

### D. *Rule 12(b)(6): TDCJ Defendants*

In the motion to dismiss filed by the TDCJ Defendants, they raise numerous grounds for dismissal based on Wanzer's alleged failure to state a claims upon which relief may be granted. (ECF No. 23). The Court will address each ground separately.

### 1. *Statute of Limitations: Defendant Peterson, Law Library Supervisor*

Wanzer contends Peterson, who is the law library supervisor at the Connally Unit, violated his civil rights "for over 8 years," "using her subordinates" to deny him access to the courts, harass him, and retaliate against him. (ECF Nos. 1, 16). The TDCJ Defendants contend Wanzer's claims against Peterson are barred by limitations. (ECF No. 23).

As previously discussed, the limitations period for a section 1983 action is two years. *See, supra*; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Owens*, 488 U.S. 235, 39–40; *Piotrowski*, 237 F.3d at 576. The limitations period begins to run when the plaintiff knows or has sufficient information to know that he has suffered an injury. *Hitt*, 301 F.3d at 246. Limitations

supports a Rule 12(b)(6) dismissal when it is evident from the plaintiff's pleadings that his action is barred and the pleadings fail to establish a basis for tolling. *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

The TDCJ Defendants point out that in Wanzer's pleadings — Complaint and more definite statement — the last date for which he provides any details regarding actions by Peterson is September 15, 2011.[4] (ECF No. 16). His other allegations are simply references to grievances against Peterson, the last of which, according to Wanzer's more definite statement, was filed October 6, 2017. (*Id.*). Limitations on Wanzer's civil rights claims against Peterson began to run on the last day she denied him access to the courts, harassed, or retaliated against him. *See Hitt*, 301 F.3d at 246. Based on Wanzer's own pleadings, the very last date upon which Peterson engaged in any act in violation of his civil rights was October 6, 2017. (ECF No. 16). Thus, Wanzer's claims against Peterson accrued no later than October 6, 2017, mandating that he file his section 1983 claims against her no later than October 6, 2019. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Owens*, 488 U.S. 235, 39–40; *Hitt*, 301 F.3d at 246. Wanzer did not file this action until July 2, 2020, almost nine months after his claims against Peterson accrued. (ECF No. 1). The Court therefore finds that Wanzer's claims against Peterson are barred by the statute of limitations, entitling her to a dismissal of those claims for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Piotrowski*, 237 F.3d at 576.

---

[4] In the Order for More Definite Statement, the Court mandated that Wanzer provide the dates for any act or omission by a defendant that violated his civil rights. (ECF No. 13).

2. *Deliberate Indifference to Serious Medical Needs*

Wanzer contends that over the last twenty years, he has been denied medical treatment for various conditions: (1) chest pains; (2) coughing up blood; (3) kidney issues, including "lumps;" (4) respiratory issues; and (5) arthritis. (ECF Nos. 1, 16). In their motion to dismiss, the TDCJ Defendants contend Wanzer has failed to plead facts showing the personal involvement of any of the named defendants, particularly Gloor and Murray, or facts sufficient for a claim based on supervisory liability. (ECF No. 23).

a. Insufficient Allegations of Personal Involvement

The Court discussed above the need for a plaintiff to allege the defendant was personally involved in the actions complained of or is responsible for the policy or custom giving rise to the alleged constitutional deprivation. *See, supra; Alderson*, 848 F.3d at 420; *Jones*, 678 F.3d at 349. Wanzer was specifically ordered to "state for each individual defendant the specific acts or omissions" he claimed each defendant committed and the date or dates of such actions. (ECF No. 13).

Although Wanzer provides details regarding his various ailments, attempts to obtain medical treatment, and the grievances filed when he allegedly did not, he has not alleged, other than by conclusory statements, that any of the named TDCJ Defendants were personally involved in denying him medical treatment or that they were responsible for a policy or custom that resulted in the denial of medical treatment.[5] (ECF Nos. 1, 16); *see Iqbal,* 556 U.S. at 678. Rather,

---

[5] Wanzer states in his pleadings that he has suffered from various medical ailments since at least 2002. (ECF Nos. 1, 16). However, neither Wanzer nor any of the Defendants clearly state what, if any, medical issues Wanzer currently suffers from. (ECF Nos. 1, 16, 23, 24, 30). Wanzer admits he has been treated at various times over the years for a number medical ailments — though not necessarily receiving the treatment he believes he needed — so it is impossible from the pleadings to determine his current medical condition. (ECF Nos. 1, 16).

16

throughout his pleadings, Wanzer alleges he was "ignored" and denied medical treatment for various medical conditions by "medical," "nurses," "medical nurses," "the prison unit medical dept.," and "a PA." (ECF Nos. 1, 16). However, Wanzer did not name any of these particular nurses or health care providers as defendants in this matter, nor did he allege any of these particular nurses or health care providers were personally involved in denying him treatment. (ECF Nos. 1, 16).

As to Gloor, Wanzer asserts she "was directly involved in the denial of [his] medical treatment." (ECF Nos. 16, 38). However, this allegation is seemingly based solely on Gloor's review of grievances filed by Wanzer over the years. (ECF No. 16). He does not allege Gloor herself denied him medical treatment, stating only that she "allowed" the denial of medical treatment. (ECF Nos. 1, 16). The same is true for Murray, the UTMB Director. Wanzer does not contend he was personally involved in denying Wanzer medical treatment; rather, Wanzer merely alleges Murray is responsible for implementing policies and practices that violated Wanzer's constitutional rights, but fails to state what policies and practices were implemented regarding denial medical care for TDCJ inmates. (ECF Nos. 1, 16). In sum, Wanzer provides no factual basis as to personal involvement for his allegations of deliberate indifference to his serious medical needs as to any of the TDCJ Defendants. (ECF No. 1, 16). Wanzer's "[t]hreadbare recitals" and "conclusory statements" are insufficient to state a section 1983 claim, particularly in light of the Court having given Wanzer an opportunity to provide a more definite statement detailing the particular acts or omissions committed by each defendants. *See Iqbal*, 556 U.S. at 678; *Macias*, 23 F.3d at 97.

b.  <u>Insufficient Allegations as to Supervisory Liability</u>

In his response to the TDCJ Defendants' motion to dismiss, Wanzer appears to contend Gloor and Murray are subject to liability for his deliberate indifference claims based on their "positions of authority," thereby appearing to contend they are liable in their supervisory capacities. (ECF No. 38). As to Gloor, he states her review of his grievances and failure to intervene renders her liable. (*Id.*). He contends Murray is liable as the UTMB Director given his control over subordinates and policies. (*Id.*).Wanzer appears to suggest these defendants are subject to supervisory liability because they were identified by him in grievances, rendering them liable for failing to act when their subordinates exhibited deliberate indifference to his serious medical needs. (*Id.*).

As previously discussed, a supervisory official may be held liable under section 1983 only when he or she: (1) affirmatively participates in the acts that caused the constitutional deprivations alleged; or (2) implements unconstitutional policies that causally result in the constitutional injury alleged. *See, supra*; *Gates*, 537 F.3d at 435. Additionally, to establish supervisory liability for based on subordinates' constitutional violation, a plaintiff must show the supervisor acted or failed to act "with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Porter*, 659 F.3d at 446. Supervisory actions that are inept, erroneous, or negligent do not amount to deliberate indifference. *Alton*, 168 F.3d at 201.

The Court has previously determined Wanzer failed to provide a sufficient factual basis for his claim of personal involvement by Gloor or Murray. *See, supra.* Wanzer does not allege that either Gloor or Murray implemented particular policies to deny medical treatment to inmates. (ECF Nos. 1, 16). And although he contends Gloor allowed subordinates to deny him medical

18

treatment, and Murray had control over subordinates, these allegations are nothing more than "[t]hreadbare recitals of the elements" of supervisory liability supported by nothing more than "conclusory statements." *Iqbal,* 556 U.S. at 678. This is insufficient to state a section 1983 claim, particularly given that the Court provided Wanzer an opportunity to provide a more definite statement. *See Macias*, 23 F.3d at 97. This Court is not required to accept as true "conclusory allegations" or "unwarranted factual inferences." *See Plotkin*, 407 F.3d at 696.

Based on the foregoing, to the extent Wanzer seeks to recover against the TDCJ Defendants based on his Eighth Amendment claim of deliberate indifference to his serious medical needs, the Court finds his claims are subject to dismissal for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

   *3. Failure to Provide Adequate Meals*

Wanzer contends he has been subjected to cruel and unusual punishment under the Eighth Amendment based on the failure to provide him with adequate meals. (ECF Nos. 1, 16). Wanzer argues that to satisfy his constitutional rights, he and other inmates should receive meals made up of "meat, vegetable[s], & dairy products," but the majority of the time inmates are fed sandwiches. (ECF Nos. 1, 16). The TDCJ Defendants contend Wanzer has failed to plead sufficient factual allegations to sustain his claim. (ECF No. 23). Specifically, they contend Wanzer has failed to: (1) allege denial of "minimal civilized measure of life's necessities" as necessary for his claim; (2) allege personal involvement by any TDCJ defendant with regard to provision of meals; or (3) provide sufficient allegations of supervisory liability by the only two TDCJ Defendants mentioned by name with regard to this claim — Kotzur and Akin. (*Id.*)

The Eighth Amendment precludes cruel and unusual punishment. *See* U.S. Const. amend. VIII. Punishment is cruel and unusual only if it involves unnecessary and wanton infliction of pain. *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). "To establish an Eighth Amendment claim, an inmate must demonstrate an objective component of conditions so serious as to deprive him of the minimal measure of life's necessities, as when denied some basic human need." *Id.*

The Constitution requires that inmates receive "reasonably adequate" food. *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996) (per curiam); *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988). Deprivation of food constitutes cruel and unusual punishment only if it denied an inmate the "minimal civilized measure of life's necessities." *Id.* (citing *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1992)).

Wanzer has alleged that inmates are generally fed sandwiches for all meals, receiving only two or three hot meals each week. (ECF No. 16). However, Wanzer does not allege these meal provisions denied him "the minimal civilized measure of life's necessities." (ECF Nos 1, 16). Moreover, the denial of hot meals for substantial periods of time does not deprive an inmate of "the minimal civilized measure of life's necessities." *Beshere v. Peralta*, No. SA-CA-1119-RP, 2016 WL 3129312, at *9 (W.D. Tex. 2016). Even if Wanzer received sandwiches as opposed to hot meal a majority of the time, there is no clearly established federal law guaranteeing inmates hot meals. *Id.* The requirement of "adequate food" focuses on the nutritional value furnished to inmates, not the method of presentation. *Id.* (citing *Talib*, 138 F.3d at 214 n.3). Wanzer generally asserts that meals comprised of meat, vegetables, fruit, and dairy would be nutritious, but he has no allegations establishing that sandwich meals served at the Connally Unit lack adequate nutrition, other than his conclusory claims. (ECF Nos. 1, 16). Wanzer is, in essence, complaining

20

about the manner in which the food is served, i.e., sandwiches versus hot meal. Thus, Wanzer has failed to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

Moreover, Wanzer has failed to allege any of the named TDCJ Defendants were personally involved in the service of inadequate meals. (ECF Nos. 1, 16). Again, to sustain a section 1983 action, a plaintiff must allege the defendant was personally involved in the actions complained of or is responsible for the policy or custom giving rise to the alleged constitutional deprivation. *See, supra; Alderson*, 848 F.3d at 420; *Jones*, 678 F.3d at 349. Moreover, Wanzer was specifically ordered to "state for each individual defendant the specific acts or omissions" he claimed each defendant committed and the date or dates of such actions. (ECF No. 13).

As with many of his claims, Wanzer provides allegations regarding what happened and when, but he fails to supply the "who." With regard to the failure to provide adequate meals, Wanzer generally alleges he was denied adequate meals, which severely impacted his health. (ECF Nos. 1, 16). He states he "has been fed sandwiches as his only source of nurishment [sic] [in place of hot meals consisting of beans, rice, corn, peas, carrots, and other vegetables, dairy products, fruits, etc.]." (ECF No. 16). Wanzer first claims sandwiches are served for every meal, but then admits to receiving a "hot meal 2 or 3 times a week." (*Id.*). However, he does not allege who was responsible for serving the inadequate meals; rather, he simply states he and other inmates were served inadequate meals. (ECF Nos. 1, 16). In fact, with regard to his claims regarding service of meals, Wanzer mentions by name only TDCJ Defendants Kotzur and Akin, who are both Food Kitchen Captains. (ECF Nos. 1, 16). In passing, he refers to "Defendant Wardens." (ECF No. 1).

As to Kotzur and Akin, as well the "Defendant Wardens," Wanzer does not allege personal involvement, but contends these defendants either supervised subordinates who provided inadequate meals — Kotzur and Akin — or "pass[ed] down, [held] to, or interpreted" a policy denying hot meals. (ECF Nos. 1, 16).

Again, supervisory officials may be held liable under section 1983 only when they are personally involved, or they implement unconstitutional policies that causally result in the constitutional injury alleged. *See, supra*; *Gates*, 537 F.3d at 435. To establish supervisory liability based on subordinates' alleged constitutional violations, a plaintiff must show the supervisor acted or failed to act "with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Porter*, 659 F.3d at 446.

Wanzer has not alleged personal involvement by any of the TDCJ Defendants, including Kotzur and Akin. *See, supra.* Moreover, he has not alleged that any TDCJ Defendant implemented particular policies unconstitutionally denying adequate meals to inmates — as stated above, providing sandwiches as opposed to hot meals is not an Eighth Amendment violation. *See Beshere*, 2016 WL 3129312, at *9. And although he contends Kotzur and Akin supervised subordinates who provided inadequate meals, given that the meals provided did not rise to the level of a constitutional violation, supervisory liability cannot be found. *See Porter*, 659 F.3d at 446.

### 4. *Failure to Provide Uncontaminated Drinking Water*

Wanzer contends that since 2002, he has been forced to drink water contaminated with arsenic, bacteria, and microbes, resulting in damage to his health. (ECF Nos. 1, 16). Wanzer claims this violates his rights under the Eighth Amendment. (*Id.*). The TDCJ Defendants contend, among

other things, that Wanzer has failed to allege personal involvement by any of the named TDCJ Defendants with regard to this claim. (ECF No. 23).

Accepting Wanzer's contentions as true, that water in the Connally Unit contains contaminants, the Court finds Wanzer has failed to allege personal involvement by any of the named TDCJ Defendants. (ECF Nos. 1, 16). Wanzer generally states he has been forced to drink contaminated water and that he has been complaining about it through grievances for years, beginning in 2013. (ECF Nos. 1, 16). He contends the "constant drinking of contaminated water" has affected his health in numerous ways. (ECF Nos. 1, 16). However, neither in his Complaint nor his more definite statement does he allege any TDCJ defendant was personally involved in the actions complained of or is responsible for the policy or custom giving rise to the alleged constitutional deprivation. *See Alderson*, 848 F.3d at 420. Rather, he conclusorily alleges that Defendants Lumpkin, Rayford, and Marcum, given their positions, instructed subordinates to implement an unconstitutional policy forcing inmate consumption of contaminated water. (ECF Nos. 1, 16). He fails, however, to allege what policy requires TDCJ officials to force inmates to drink contaminated water or that any TDCJ defendant was responsible for such a policy. (ECF Nos. 1, 16).

Wanzer's allegations regarding contaminated water are merely "[t]hreadbare recitals of the elements" of supervisory liability supported by nothing more than "conclusory statements." *Iqbal,* 556 U.S. at 678. This is insufficient to state a section 1983 claim, particularly given that the Court provided Wanzer an opportunity to provide a more definite statement. *See Macias*, 23 F.3d at 97. As previously stated, this Court is not required to accept as true "conclusory allegations" or "unwarranted factual inferences." *See Plotkin*, 407 F.3d at 696.

Thus, to the extent Wanzer seeks to recover against the TDCJ Defendants based on his Eighth Amendment claim regarding contaminated water in the Connally Unit, the Court finds his claims are subject to dismissal for failure to state a claim upon which relief may be granted, entitling the TDCJ Defendants to dismissal of this claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

5. *Denial of Access to Courts & Due Process Violation Based on Seizure of Property*

Wanzer contends that during a search of inmates' cells and property, i.e., "a shakedown," TDCJ Defendants Alexandre, Woleslagle, and Rojas unlawfully retaliated against him, seemingly for filing numerous lawsuits, in violation of his right of access to the courts under the First Amendment when they took property from him, including legal materials. (ECF Nos. 1, 16). According to Wanzer, in response to his grievance over the matter, he was advised his property was seized because it exceeded the capacity of his "red crate" in violation of TDCJ policy. (ECF Nos. 1, 16). Wanzer also contends the seizure of his property was a violation of his Fourteenth Amendment due process rights. (ECF Nos. 1, 16). In their motion to dismiss, the TDCJ Defendants contend Wanzer has failed to state a claim regarding either his access to courts or due process claims. (ECF No. 23). With regard to his access to courts claim, they contend he has failed to allege an actual injury or prejudice. (*Id.*). As to Wanzer's due process claim, the TDCJ Defendants contend Wanzer is not entitled to relief because he has an adequate remedy under state law, thereby barring his claim. (*Id.*).

a. Access to Courts

Prisoners have a constitutionally protected right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). Because this right

24

is not a "freestanding right," to state a cognizable First Amendment claim, a plaintiff must demonstrate actual injury resulting from the alleged denial of access. *Lewis*, 518 U.S. at 351; *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999). To demonstrate actual injury, a plaintiff must show he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *Lewis*, 518 U.S. at 351. In other words, a plaintiff must show "that his position as a litigant was prejudiced" as a direct result of the denial of access. *Eason*, 73 F.3d at 1328.

Here, Wanzer's merely concludes he was denied access to the courts because his property, including legal materials, was seized. (ECF Nos. 1, 16). Wanzer has not alleged, much less demonstrated, that he lost an actionable claim or was prevented from presenting an actionable claim due to the alleged property seizure. (ECF Nos. 1, 16). In his more definite statement, Wanzer claims the seizure of his materials "hindered him from addressing and defending pending cases … in the 5th Circuit[:] (a) an injunction appeal; [and] (b) an appeal of a Rule 60(b) in Cause No. SA-13-693-HJB."[6] First, Wanzer does not state how the seizure of the legal materials hindered his pursuit of these cases; rather, he simply concludes it did. (ECF Nos. 1, 16). Second, Wanzer has failed to demonstrate these appeals were "actionable." (ECF Nos. 1, 16).

The "injunction appeal" was dismissed by the Fifth Circuit based on Wanzer's failure to pay the appellate filing fee. *See Wanzer v. Gloor*, No. SA-13-CA-HJB, 2015 WL 13546620 (W.D. Tex. 2015) (ECF No. 153). Wanzer does not explain how the confiscation of his legal materials prevented him from paying the filing fee. In the second appeal, Wanzer challenged this

---

[6] Wanzer filed two separate notices of appeal in *Wanzer v. Gloor*, No. SA-13-CA-HJB, 2015 WL 13546620 (W.D. Tex. 2015) (ECF Nos. 144, 151). The first concerned this Court's denial of an injunction and was dismissed for failure to pay the filing fee. (ECF No. 144). The second challenged this Court's summary judgment order. (ECF No. 151). The Fifth Circuit affirmed the summary judgment order. *See Wanzer v. Gloor*, 691 F. App'x 191, 192 (5th Cir. 2017) (per curiam).

Court's summary judgment order. The appeal was affirmed by the Fifth Circuit, which found Wanzer had failed to raise *in the district court* the existence of fact issues to defeat summary judgment. *See Wanzer v. Gloor*, 691 F. App'x 191, 192 (5th Cir. 2017) (per curiam). No matter how eloquently Wanzer might have argued his case in his briefing before the Fifth Circuit, it would not have changed his failure to raise a fact issue in this Court. Thus, Wanzer has failed to demonstrate either appeal was actionable. (ECF Nos. 1, 16).

Wanzer has not shown he lost an actionable claim or was prevented from presenting such a claim as a direct result of a denial of his First Amendment right to access the courts. *See Lewis*, 518 U.S. at 351. He has not shown his position as a litigant was prejudiced. *See Eason*, 73 F.3d at 1328. In sum, he has failed to demonstrate he suffered an actual injury. Because he failed to demonstrate an actual injury, the TDCJ Defendants are correct in their contention that he has failed to state a claim upon which relief may be granted. (ECF No. 23); *see* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

  b. <u>Due Process</u>

In *Hudson v. Palmer*, the Supreme Court held that deprivations of property — intentional or negligent — caused by state officials do not infringe on constitutional due process provided adequate state post–deprivation remedies exist. *Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)); *see Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). In other words, under the *Parratt/Hudson* doctrine, random and unauthorized deprivations of property, whether intentional or negligent, neither violate the Constitution nor state a claim under section 1983 of Title 42 when adequate state remedies exist. *See Hudson*, 468 U.S. at 533; *Parratt*, 451 U.S. at

26

543. Even when a deprivation of property is authorized by an administrative directed, e.g., TDCJ–ordered search of inmate cells, it falls under the *Parratt/Hudson* doctrine. *Leggett v. Williams*, 277 F. App'x 498, 500 (5th Cir. 2008). In *Leggett*, the Fifth Circuit held that when an inmate contends prison officials conspired to confiscate and destroy his property as an act of retaliation — similar to Wanzer's claims in this action — the *Parratt/Hudson* doctrine is applicable. *Id.* The Court found the doctrine applicable even though such a claim is based on the purported random and unauthorized acts of prison officials. *Id.* Thus, if Texas provides adequate state post–deprivation remedies, Wanzer may not assert a due process violation based on the seizure of his property. *See Hudson*, 468 U.S. at 533; *Parratt*, 451 U.S. at 543.

It is well–established that Texas state administrative and judicial systems provide an adequate post–deprivation remedy for inmates whose property has been improperly taken or destroyed. First, the Texas Government Code authorizes the Texas Department of Criminal Justice ("TDCJ") to award up to $500.00 on claims that it lost or damaged an inmate's personal property. *See* TEX. GOV'T CODE ANN. § 501.007. Second, an inmate may seek relief through the prison grievance system. *See id.* § 501.008 (requiring TDCJ to develop and maintain grievance system for use by inmates housed in its facilities). Finally, and as recognized by the Fifth Circuit, the tort of conversion provides inmates with an avenue for relief for deprivations of personal property. *See Murphy*, 26 F.3d at 543. The burden is on the inmate to show the post–deprivation remedy is inadequate. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Thus, the appropriate forum for Wanzer's property loss claim lies in a Texas state court or in the TDCJ administrative procedures, and he may pursue a claim under section 1983 only after those remedies are denied on grounds other than the merits of the claim. *Thompson v. Steele*, 709 F.3d 381, 383 (5th Cir. 1983).

Wanzer has not shown the available post–deprivation remedies are inadequate or even that he has attempted to pursue such remedies and they were denied. *See Myers*, 97 F.3d at 94; *Thompson*, 709 F.3d at 383. Because Wanzer has adequate remedies to address his loss of property claim, he may not assert a violation of due process based on the loss of property in this section 1983 action. *See Hudson*, 468 U.S. at 533; *Parratt*, 451 U.S. at 543. Accordingly, he has failed to state a claim upon which relief may be granted, entitling any TDCJ Defendants against whom a due process violation was alleged to dismissal. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

*6. Failure to Plead Sufficient Facts to Sustain Retaliation Claims*

Wanzer alleges retaliation in relation to his alleged denial of medical care and access to courts claims. (ECF Nos. 1, 16). As to his medical care claim, Wanzer contends he was disciplined in retaliation for his refusal to sign a "refusal of treatment form." (ECF Nos. 1, 16). Regarding his access to courts claim, Wanzer seems to contend he was disciplined in retaliation for protesting when his property was seized for exceeding the bounds of the required crate used by inmates to store their personal property. (ECF Nos. 1, 16).

The TDCJ Defendants contend he has failed to state a claim based on retaliation. (ECF No. 23). "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Garcia v. Gonzalez*, 478 F. App'x 928, 929 (5th Cir. 2012) (quoting *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999)); *see Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). To establish causation, the prisoner must show that but for the retaliatory motive, the action complained of would not have occurred. *Johnson*, 110 F.3d at 310.

TDCJ provides inmates with an Offender Orientation Handbook ("Orientation Handbook").[7] *See Tex. Dep't of Criminal Justice Offender Orientation Handbook* (revised 2017), *available at* [Texas Department of Criminal Justice, Offender Orientation Handbook](#) (last visited Jan. 28, 2022). Section VIII of the Orientation Handbook advises inmates that they are required to obey all rules and regulations issued by TDCJ and their specific unit. *Tex. Dep't of Criminal Justice Offender Orientation Handbook*, § VIII(A), p. 71. Inmates are further advised that if they violate a rule, they may be punished through the disciplinary process. *Id.* They are told to refer to the TDCJ Disciplinary Rules and Procedures for Offenders Handbook ("Disciplinary Handbook").[8] *Id.*; *see Tex. Dep't of Criminal Justice Disciplinary Rules and Procedures for Offenders* (revised 2019), *available at* [Disciplinary Rules and Procedures for Offenders (texas.gov)](#) (last visited Jan. 28, 2022).

The Disciplinary Handbook provides that refusing or failing to obey legitimate orders from TDCJ staff members is a Level 2 offense for which disciplinary action may be taken. *Tex. Dep't of Criminal Justice Disciplinary Rules and Procedures for Offenders*, § XV, Attachment B, 24.0. As noted above, Wanzer admits that with regard to his retaliation claim based on medical care, disciplinary action was taken against him when he refused to sign a refusal of medical care document. (ECF Nos. 1, 16). In an affidavit attached to his Step 1 grievance form, Wanzer avers that a sergeant came to his cell to escort him to "medical." (ECF No. 16, p. 33). Wanzer advised the sergeant that he had been to medical the previous week and was sent back to his cell. (*Id.*). The

---

[7] This Court may and will take judicial notice of the Orientation Handbook. *See Ali v. Stephens*, 822 F.3d 776, 782 n.5 (5th Cir. 2016) (noting court has previously taken judicial notice of Orientation Handbook and would do so again) (citing *Cantwell*, 788 F.3d at 509); *see also* FED. R. EVID. 201.
[8] Just as this Court takes judicial notice of the Orientation Handbook, it likewise takes judicial notice of the Disciplinary Handbook. *Cf. Ali*, 822 F.3d at 782 n.5; *see* FED. R. EVID. 201.

sergeant told Wanzer that because it appeared he was supposed to be taken to medical, he would need to sign a refusal of medical treatment form. (*Id.*). Wanzer refused. (*Id.*) He was advised that if he did not comply with the order to sign the form, he would be disciplined. (ECF No. 16, p. 34). Wanzer again refused. (*Id.*). Wanzer was subsequently disciplined for failure to sign the form as directed by TDCJ staff. (ECF No. 16, pp. 29–32).

By his own admission, Wanzer violated the disciplinary rule prohibiting inmates from refusing to comply with legitimate staff orders. (ECF No. 16, pp. 33–34). He was, therefore, subject to disciplinary action. *See Tex. Dep't of Criminal Justice Disciplinary Rules and Procedures for Offenders*, § XV, Attachment B, 24.0. Wanzer has not established that but for a retaliatory motive, the disciplinary action would not have occurred. *See Johnson*, 110 F.3d at 310. Thus, because Wanzer was subject to discipline for refusing a staff order, and he provides nothing more than a conclusory allegation that the disciplinary action was retaliatory, the Court finds Wanzer has failed to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

Unauthorized storage of property is a Level 3 offense for which an offender may be disciplined. *Tex. Dep't of Criminal Justice Disciplinary Rules and Procedures for Offenders*, § XV, Attachment C, 35.0. Wanzer admits in his pleadings that his property exceeded the limits of the crate in violation of TDCJ policy. (ECF Nos. 1, 16). The Disciplinary Handbook states this is a Level 3 offense. Wanzer was subject to disciplinary action for violating a disciplinary rule. *See Tex. Dep't of Criminal Justice Disciplinary Rules and Procedures for Offenders*, § XV, Attachment C, 35.0. Other than the fact that he was disciplined, Wanzer has no allegations supporting a retaliation claim based on his protest of the crate policy. Given that storage of

unauthorized property is a violation for which an inmate may be disciplined and his admission that he had property exceeding the limits imposed by TDCJ, Wanzer has not established that but for a retaliatory motive, the disciplinary action would not have occurred. *See Johnson*, 110 F.3d at 310. Thus, because Wanzer was subject to discipline for having unauthorized property and he has advanced only his conclusory personal belief that he was disciplined in retaliation for his protest of the crate policy, the Court finds Wanzer has failed to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

7. *Qualified Immunity*

Qualified immunity has been described as "'an entitlement not to stand trial or face the other burdens of litigation.'" *Staten v. Adams*, 939 F. Supp. 2d 715, 723 (S.D. Tex. 2013) (quoting *Saucier v. Katz*, 533 U.S. 194, 199–200 (2001)), *aff'd*, 615 F. App'x 223 (5th Cir. 2015). Qualified immunity "provides ample protections to all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 511, 526 (1986)). It is a shield from "'undue interference'" with a government official's duties and "'potentially disabling threats of liability.'" *Collie v. Barron*, 747 F. App'x 950, 952 (5th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)).

Once a defendant pleads qualified immunity, the Court must undertake a two–pronged inquiry. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014) (per curiam). Under the first prong, the Court must determine whether the facts alleged by the plaintiff establish or "make out a violation of a constitutional right." *Darden*, 880 F.3d at 727 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)); *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008). The second prong requires the Court to determine whether the defendant's actions were objectively reasonable in light of the law that was

"clearly established" at the time of the alleged constitutional violation. *Darden*, 880 F.3d at 727; *Haverda v. Hays Cnty.*, 723 F.3d 586, 598 (5th Cir. 2013).

Upon review of Wanzer's claims against the TDCJ Defendants, the Court has found he failed to state a claim upon which relief may be granted. *See, supra.* Accordingly, because Wanzer has not alleged facts making out a violation of a constitutional right, *see Darden*, 880 F.3d at 727, the TDCJ Defendants are entitled to qualified immunity. *See Wanzer*, 691 F. App'x at 192 (citing *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 223 (5th Cir. 1999)).

CONCLUSION

Based on the foregoing, this Court finds Defendants' motions to dismiss should be granted. Wanzer's claims against Stengel and the TDCJ Defendants in their official capacities for monetary damages or other retrospective relief are subject to dismissal without prejudice for want of jurisdiction based on immunity under the Eleventh Amendment. *See* U.S. CONST. amend. XI. Wanzer's remaining claims against Defendants are subject to dismissal with prejudice for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1). And because Wanzer has not alleged facts making out a violation of a constitutional right, the TDCJ Defendants are entitled to qualified immunity. *See Wanzer*, 691 F. App'x at 192.

**IT IS THEREFORE ORDERED** that Defendants' Motions to Dismiss (ECF Nos. 23, 24, 30) are **GRANTED**.

**IT IS FURTHER ORDERED** that Wanzer's 42 U.S.C. § 1983 claims against Defendant Stengel and the TDCJ Defendants in their official capacities for monetary damages or other retrospective relief (ECF No. 1) are **DISMISSED WITHOUT PREJUDICE FOR WANT OF JURISDICTION** based on sovereign immunity. *See* U.S. CONST. amend. XI.

**IT IS FURTHER ORDERED** that Wanzer's 42 U.S.C. § 1983 claims against Defendants in their individual capacities (ECF No. 1) are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

It is so **ORDERED**.

SIGNED this 31st day of January, 2022.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE